

RECEIVED

JUN 0 5 2023

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, 7th floor        973-645-2700
Newark, New Jersey 07102

AMT/PL AGR/2017R00879

May 22, 2023

Arturo V. Hernandez, Esq.
Ramon Hernandez, Esq.
40 N.W. 3rd Street
Suite 200
Miami, FL 33128

Re:   Rule 11(c)(1)(C) Plea Agreement with Onur Aksoy

Dear Counsel:

*Cr. 22-464 (PGS)*

This letter sets forth the plea agreement between your client, Onur Aksoy ("Aksoy" or the "Defendant"), and the United States Attorney for the District of New Jersey and the Computer Crime and Intellectual Property Section of the United States Department of Justice (jointly, "this Office"). This offer will expire on **June 5, 2023** if it is not accepted in writing by that date. If Aksoy does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

Charges

Conditioned on the understandings specified below, and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), this Office will accept a guilty plea from Aksoy to Counts 1 and 4 of the Indictment currently pending against him (Crim. No. 22-464) (the "Indictment"). Count 1 charges Aksoy with , between in or about August 2013 through in or about April 2022, conspiring to: (1) traffic in counterfeit goods contrary to 18 U.S.C. § 2320(a)(1); (2) commit mail fraud contrary to 18 U.S.C. § 1341; and (3) commit wire fraud contrary to 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 371. Count 4 charges Aksoy with mail fraud on or about December 18, 2019, in violation of 18 U.S.C. § 1341. If Aksoy enters a guilty plea and is sentenced to at least 48 and no more than 78 months' imprisonment and 3 years' supervised release on these charges (the "Stipulated Range") and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against Aksoy related to the trafficking of counterfeit goods between August 2013 and April 2022. In addition, if Aksoy fully complies with this agreement, at

QA

sentencing, this Office will move to dismiss the remaining counts of the Indictment (Counts 2-3 and 5-11).

But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may reinstate any dismissed charges and initiate any other charges against Aksoy even if the applicable statute of limitations period for those charges expires after Aksoy signs this agreement, and Aksoy agrees not to assert that any such charges are time-barred.

If the Court rejects this plea agreement, Aksoy may withdraw his guilty plea. Whether or not Aksoy does, if the Court rejects this plea agreement, this Office may withdraw from it. If the Court defers a decision to accept the plea agreement until the Court has reviewed the presentence report pursuant to Rule 11(c)(3)(A), Aksoy will not move to withdraw his guilty plea unless and until the Court rejects the plea agreement.

Sentencing

The violation of 18 U.S.C. § 371 to which Aksoy agrees to plead guilty in Count 1 of the Indictment carries a maximum prison sentence of 5 years. The violation of 18 U.S.C. § 1341 to which Aksoy agrees to plead guilty in Count 4 of the Indictment carries a maximum prison sentence of 20 years. Each violation also carries a statutory maximum fine equal to the greatest of (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. The prison sentences on Counts 1 and 4 may run consecutively to each other or to any prison sentence Aksoy is serving or is ordered to serve. Fines imposed by the sentencing judge may be subject to the payment of interest.

Pursuant to Rule 11(c)(1)(C), this Office and Aksoy agree that a sentence within the Stipulated Range is the appropriate disposition of the case. Accordingly, if the Court accepts this plea agreement, the Court must sentence Aksoy to at least 48 and no more than 78 months' imprisonment and 3 years' supervised release.

Further, in addition to imposing any other penalty on Aksoy, the sentencing judge as part of the sentence:

(1)     will order Aksoy to pay an assessment of $100 per count pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2)    must order Aksoy to pay restitution pursuant to 18 U.S.C. § 3663 *et seq.*;

(3)    must order forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 2323(b) and 28 U.S.C. § 2461(c);

(4)    may order, pursuant to 18 U.S.C. § 3555, that Aksoy give reasonable notice and explanation of the conviction to any victims of his offense; and

(5)    pursuant to 18 U.S.C. § 3583, may require Aksoy to serve a term of supervised release of not more than three years, which will begin at the expiration of any term of imprisonment imposed.  Should Aksoy be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Aksoy may be sentenced to not more than two years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Forfeiture

As part of his acceptance of responsibility, and pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 2323(b) and 28 U.S.C. § 2461(c), Aksoy agrees to forfeit to the United States all of his right, title, and interest in any property, real or personal, which constitutes or is derived from any proceeds the defendant obtained that are traceable, directly or indirectly, to the conspiracy to violate 18 U.S.C. §§ 1341, 1343, and 2320, all in violation of 18 U.S.C. § 371, as charged in Count 1 of the Indictment, and the violation of 18 U.S.C. § 1341 charged in Count 4 of the Indictment.  Aksoy further agrees that the aggregate value of such property was $15,000,000; that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists; and that the United States is therefore entitled to forfeit substitute assets equal to the value of the proceeds obtained by the defendant, in an amount not to exceed $15,000,000 (the "Forfeiture Amount").  The defendant further consents to the entry of an order requiring the defendant to pay the Forfeiture Amount, in the manner described below (the "Order"), which may be satisfied in whole or in part with substitute assets. The defendant further agrees that upon entry of the Order, this Office is authorized to conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Forfeiture Amount in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

All payments made in full or partial satisfaction of the Order shall be made by (i) electronic funds transfer, as directed by the Office; or (ii) postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating the defendant's name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Forfeiture and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102.

Aksoy further agrees, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 2323(b) and 28 U.S.C. § 2461(c), to forfeit all of his right, title, and interest in the specific property listed on Schedule B hereto (the "Specific Property"), which the defendant admits has the requisite nexus to the offenses charged in Counts 1 and 4 of the Indictment. Any forfeited money and the net proceeds from the sale of the Specific Property (excepting the Cisco computer networking products seized on or about July 21, 2021) will be applied to the Forfeiture Amount, in partial satisfaction thereof. Aksoy also consents to the entry of orders of interlocutory sale for the Specific Property, following entry of a preliminary order of forfeiture as to such property pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure. Aksoy further understands and agrees that at the conclusion of the forfeiture proceedings, the court will order the destruction of the Cisco computer networking products seized on or about July 21, 2021 unless otherwise requested by the Office, in accordance with 18 U.S.C. § 2323(b)(2)(B).

Aksoy waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the entry of a judgment of forfeiture as to the Money Judgment that will be final as to the defendant prior to sentencing. The defendant understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure at the guilty plea proceeding. The defendant waives any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

Aksoy further agrees that not later than the date he enters his plea of guilty he will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If Aksoy fails to provide a complete and accurate Financial Disclosure Statement by the date he enters his plea of

- 4 -

guilty, or if this Office determines that Aksoy has intentionally failed to disclose assets on his Financial Disclosure Statement, Aksoy agrees that that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

<u>Restitution</u>

Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, Aksoy agrees to pay full restitution to the victims of the offenses of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying those offenses in an amount that fully compensates the victims for the losses sustained as a result of those offenses to such victims, and in such amounts, as either the parties will agree before the time of sentencing or that the Court will determine through a restitution hearing at the time of sentencing. But Aksoy and this Office agree that those victims, and those amounts, include (but are not necessarily limited to) at least the following:

(1)     Cisco Systems Inc., in an amount to either be agreed upon by the parties before sentencing or decided by the Court through a restitution hearing at the time of sentencing; and

(2)     Purchasers of purported Cisco products from Aksoy or any of the Pro Network Entities, Pro Network Amazon Storefronts, or Pro Network eBay Storefronts listed in the Indictment, in the amount of (i) the sum paid to Aksoy or any of the Pro Network Entities, Pro Network Amazon Storefronts, or Pro Network eBay Storefronts for those products and (ii) any additional losses sustained by those purchasers caused by the failure or deficient performance of those products.

<u>Rights of This Office Regarding Sentencing</u>

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on Aksoy by the sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Aksoy's activities and relevant conduct with respect to this case.

oA

<u>Stipulations</u>

This Office and Aksoy will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. The stipulations in Schedule A are offered as recommendations to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

<u>Waiver of Appeal and Post-Sentencing Rights</u>

If the Court imposes a sentence within the Stipulated Range, neither party will appeal that sentence. In addition, except as specified in the next paragraph below, and in exchange for the concessions this Office made in entering into this plea agreement, Aksoy will not challenge by any means his conviction or any component of his sentence. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence.

Both parties reserve the right to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

(1)     Any proceeding to revoke the term of supervised release.

(2)     A motion to reduce the term of imprisonment under 18 U.S.C.
        § 3582(c)(1)(A).

(3)     An appeal from the denial of a § 3582(c)(1)(A) motion on the
        grounds that the court erred in finding no extraordinary and
        compelling circumstances warranting a reduced term of
        imprisonment or that the court failed to consider those
        circumstances as a discretionary matter under the applicable
        factors of 18 U.S.C. § 3553(a).

(4)     Any claim Aksoy pursues in an appropriate forum, when permitted
        by law, that Aksoy received constitutionally ineffective assistance
        of counsel.

<u>Immigration Consequences</u>

Aksoy understands that, if Aksoy is not a citizen of the United States, Aksoy's guilty plea to the charged offenses will likely result in Aksoy being subject to immigration proceedings and removed from the United States by making Aksoy deportable, excludable, or inadmissible, or ending Aksoy's naturalization. Aksoy understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. Aksoy wants and agrees to plead guilty to the charged offenses regardless of any immigration consequences of this plea, even if this plea will cause Aksoy's removal from the United States. Aksoy understands that Aksoy is bound by this guilty plea regardless of any immigration consequences. Accordingly, Aksoy waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. Aksoy also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

<u>Other Provisions</u>

This agreement is limited to this Office and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Aksoy. So this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

- 7 -

<u>No Other Promises</u>

This agreement constitutes the entire plea agreement between Aksoy and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

VIKAS KHANNA
Attorney for the United States
Acting Under Authority
Conferred by 28 U.S.C. § 515

/s/ Andrew M. Trombly

By: Andrew M. Trombly
Assistant U.S. Attorney

KENNETH A. POLITE
Assistant Attorney General

By: James A. Silver
Deputy Chief
Computer Crime and Intellectual
Property Section

APPROVED:

Desiree Grace
Deputy Chief, Criminal Division

I have received this letter from my attorneys, Arturo Hernandez, Esq. and Raymond Hernandez, Esq. I have read it. My attorneys and I have reviewed and discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. I understand that this plea agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and I accept those terms. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

Date: 05/22/2023

Onur Aksoy

I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. My client understands that this plea agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and my client accepts those terms. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

Date: 5/22/2023

Arturo Hernandez, Esq.
Raymond Hernandez, Esq.
Counsel for Defendant

5/23/23

- 9 -

Rule 11(c)(1)(C) Plea Agreement With Onur Aksoy

Schedule A

This Office and Onur Aksoy (the "Defendant") agree to stipulate to the following facts:

Count 1

1.      From at least as early as August 2013 through at least as recently as April 2022, the Defendant formed, owned, controlled, and operated Pro Network LLC ("Pro Network") and numerous related business entities that purported to be in the business of selling genuine, high-quality computer networking equipment (the "Pro Network Entities"), including equipment purportedly manufactured by Cisco Systems, Inc. ("Cisco").

2.      During this period, the Defendant, through the Pro Network Entities, knowingly and intentionally imported into the United States from illicit suppliers in China and Hong Kong (the "Supplier Coconspirators") tens of thousands of low-quality, modified computer networking devices with counterfeit Cisco labels, stickers, boxes, documentation, and packaging, all bearing counterfeit trademarks registered and owned by Cisco, that, as the Defendant knew and intended, made the goods falsely appear to be new, genuine, and high-quality devices manufactured and authorized by Cisco (the "Counterfeit Cisco Products").

3.      During the period set forth in paragraph 1 above, the Defendant, through the Pro Network Entities, knowingly sold Counterfeit Cisco Products to others by falsely representing those products as new, genuine, and high-quality Cisco equipment.  Some of those sales occurred through approximately 15 separate Amazon seller accounts associated with various Pro Network Entities (the "Pro Network Amazon Storefronts") as well as at least ten separate eBay seller accounts associated with various Pro Network Entities (the "Pro Network eBay Storefronts)."  The Pro Network Amazon Storefronts and the Pro Network eBay Storefronts were under the Defendant's full ownership and control.

4.      During this period, the Defendant knowingly and intentionally conspired with others to commit each of the following offenses against the United States, as charged by Count 1 of the Indictment, all in violation of 18 U.S.C. § 371:

        a.      to intentionally traffic in the Counterfeit Cisco Products described above, contrary to 18 U.S.C. § 2320(a)(1);

        b.      for the purpose of executing the scheme and artifice to defraud described above, to knowingly cause to be delivered by a private

- 10 -

𝒪𝒜

and commercial interstate carrier shipments of the Counterfeit Cisco Products, contrary to 18 U.S.C. § 1341; and

       c.     also for the purpose of executing the scheme and artifice to defraud described above, to knowingly transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to 18 U.S.C. § 1343.

<u>Count 4</u>

5.     On or about December 18, 2019, in furtherance of the scheme and artifice to defraud described above, the Defendant knowingly caused a shipment containing a Counterfeit Cisco Product—namely, one purportedly new, genuine, and high-quality boxed Cisco switch, product ID WS-C2960S-48FPD-L—to be shipped by a private and commercial interstate carrier to a location in New Jersey.

- 11 -

Rule 11(c)(1)(C) Plea Agreement With Onur Aksoy

Schedule B

1.   All right, title, and interest of defendant ONUR AKSOY in the real property and appurtenances known as 6783 SW 104 Street, Pinecrest, Miami-Dade County, Florida 33156, Folio: 20-5002-000-1100;

2.   Approximately $68,419.79 formerly on deposit in TD Bank account no. XXXXXX2796 held in the name of Onur Aksoy;

3.   Approximately $204,819.89 formerly on deposit in JPMChase account no. XXXXX8633 held in the name of Onur Aksoy;

4.   All securities and other property in TD Ameritrade account no. XXX-XX8107 held in the name of Onur Aksoy;

5.   Approximately $124,155.39 formerly on deposit in TD Ameritrade account no. XXX-XX8107 held in the name of Onur Aksoy; and

6.   Approximately 1,156 counterfeit Cisco computer networking products seized on or about July 21, 2021 from 1701 NW 93rd Avenue, Doral, Florida.